Case 1:10-cv-01205-RJJ ECF No. 1, PageID.1 Filed 12/07/10 Page 1 of 8

FILED - GR
December 7, 2010 3:21 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: aid / _____ SCANNED BY /tv 12 /

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Matthew Penning,

       Plaintiff,

       Hon.

v.

Enhanced Recovery Company, LLC, a Delaware limited liability company,

       Defendant.

1:10-cv-1205
Robert J. Jonker
U.S. District Judge

## Complaint

### I. Introduction

1. This is an action for damages, brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

### II. Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

### III. Parties

3. Plaintiff Matthew Penning is a natural person residing in Kent County, Michigan. Mr. Penning is a "consumer" and "person" as the terms are defined and/or used in the FDCPA.

1

Mr. Penning is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MOC.

    4.    Defendant Enhanced Recovery Company, LLC ("ERC") is a Delaware limited liability company, with offices at 8014 Bayberry Road, Jacksonville, Florida 32256. The registered agent for ERC in Michigan is Capitol Corporate Services, Inc., 712 Abbott Road, East Lansing, Michigan 48823. ERC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ERC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ERC is a "debt collector" as the term is defined and/or used in the FDCPA. ERC is qualified to do business in Michigan for the stated purpose of "Third party debt collections via interstate commerce." ERC is licensed (No. 2401002129) by the State of Michigan to collect delinquent consumer debts in Michigan. ERC is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

**IV.    Facts**

    5.    Mr. Penning had a credit account (No. xxxx xxxx xxxx 4931) with HSBC which he used to obtain goods and/or services for personal, family and/or household purposes. Any resulting obligation of Mr. Penning to pay money was a "debt" as the term is defined and/or used in the FDCPA and MOC.

    6.    Mr. Penning later had a dispute with HSBC regarding the debt.

    7.    Mr. Penning disputes the debt.

    8.    Mr. Penning refuses to pay the debt.

    9.    HSBC or a successor in interest hired ERC to collect the alleged debt from Mr.

Penning. Alternatively, ERC purchased the alleged debt after the account allegedly went into default.

10. ERC placed one or more telephone calls to Mr. Penning in efforts to collect the alleged debt.

11. On or about November 30, 2010, Mr. Penning spoke by telephone with a female ERC employee who identified himself as Derrick. The ERC employee stated that ERC had been hired by HSBC to collect the debt. In the ensuing conversation, the ERC employee made the following statements to Mr. Penning:

   a) Mr. Penning had not made a payment on the account since May 27, 2010.

   b) Mr. Penning owed $1,535.85 on the account, comprised of a principal amount of only $714.85, plus over limit fees of $535.00 and late fees of $286.00.

   c) The account was 207 days delinquent.

   d) In three days, the account would become 210 days delinquent, and on that day HSBC would charge off the account, transfer the account to a third party collection agency, and the account would then stay on Mr. Penning's credit history.

   e) The account currently was not being reported on Mr. Penning's credit history, but in three days it would be reported to the credit bureaus and would sit on Mr. Penning's credit as a bad debt.

   f) Interest was being added to the account, daily, at an annual rate of 29.9 percent.

   g) Derogatory information regarding the account would remain on Mr. Penning's credit for a period of seven to ten years.

3

h) The debt currently was not being reported on Mr. Penning's credit history, but would be reported on the 211th day of delinquency.

i) If Mr. Penning did not settle the account with ERC in the next three days, HSBC would then charge off the account, send the account to a rowdy and aggressive third party collection agency which would keep pounding and pounding until Mr. Penning paid the debt, and Mr. Penning would no longer have the option of settling the account for less than the full amount owed.

12. ERC and its employee misrepresented the character, amount, and legal status of a debt.

13. ERC and its employee falsely stated to Mr. Penning that in three days, the account would become 210 days delinquent, and on that day HSBC would charge off the account, transfer the account to a third party collection agency, and the account would then stay on Mr. Penning's credit history.

14. ERC and its employee falsely stated to Mr. Penning that the account currently was not being reported on Mr. Penning's credit history, but in three days it would be reported to the credit bureaus and would sit on Mr. Penning's credit as a bad debt.

15. ERC and its employee falsely stated to Mr. Penning that interest was being added to the account, daily, at an annual rate of 29.9 percent.

16. The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, states that no consumer reporting agency may make any consumer report containing information regarding "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4). The running of the seven-year period begins "upon the

expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(c)(1).

17. It is a violation of the FDCPA for a debt collector to make false statements to a consumer regarding the length of time for which derogatory information regarding a debt may remain on the consumer's consumer report. *Shields v. Merchants & Medical Credit, Inc.,* 2010 WL 2613086 (USDC, ED Mich, June 28, 2010).

18. ERC and its employee falsely stated to Mr. Penning that derogatory information regarding the account would remain on Mr. Penning's credit for a period of seven to ten years.

19. ERC and its employee made false representations to Mr. Penning regarding the length of time for which derogatory information regarding the debt could remain on Mr. Penning's consumer report.

20. ERC and its employee falsely stated to Mr. Penning that the debt currently was not being reported on Mr. Penning's credit history, but would be reported on the 211th day of delinquency.

21. ERC and its employee falsely stated to Mr. Penning that if Mr. Penning did not settle the account with ERC in the next three days, HSBC would then charge off the account, send the account to a rowdy and aggressive third party collection agency which would keep pounding and pounding until Mr. Penning paid the debt, and Mr. Penning would no longer have the option of settling the account for less than the full amount owed.

22. ERC failed to send Mr. Penning a timely and written notice of his rights as required by the FDCPA, 15 U.S.C. § 1692g.

23. The ERC employee intended to speak the words he spoke to Mr. Penning.

24. The acts and omissions of ERC and its employees done in connection with efforts to collect a debt from Mr. Penning were done intentionally and wilfully.

25. ERC and its employees intentionally and wilfully violated the FDCPA and MOC.

26. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, embarrassment, stress, mental anguish, emotional stress, and suffering for which he should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

27. Plaintiff incorporates the foregoing paragraphs by reference.

28. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

   b) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

   c) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

   d) Defendant violated 15 U.S.C. § 1692g.

6

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

29. Plaintiff incorporates the foregoing paragraphs by reference.

30. Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor;

c) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

d) Defendant violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: December 7, 2010

*/s/ Phillip C. Rogers*

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com

8